Filed 3/10/26  P. v. Angeles CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064416 |
| v. | (Super. Ct. No. 14CF3203) |
| MARIA ANGELES, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Walter P. Schwarm, Judge. Affirmed.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General,

Christopher P. Beesley and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

*          *          *

Maria Angeles asked the trial court to vacate her convictions on the ground that at the time she pled guilty she did not understand the immigration consequences of her plea, and that lack of understanding prejudiced her. The trial court denied the motion to vacate. Having reviewed the appellate record de novo, we conclude the trial court did not err, and we affirm its order.

FACTUAL AND PROCEDURAL BACKGROUND

In November 2014, Angeles pled guilty to one count of obtaining aid over $400 by misrepresentation (Welf. & Inst. Code, § 10980, subd. (c)(2)), and five counts of perjury by false application for aid (Pen. Code, § 118, subd. (a)). The maximum possible sentence had Angeles gone to trial and been convicted was eight years, eight months. Under the terms of the plea agreement, Angeles was placed on probation for three years and ordered to serve 180 days in jail.

Angeles's plea agreement included the following language, which Angeles initialed: "Immigration consequences: I understand if I am not a citizen of the United States, my conviction for the offense charged will have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (Boldface omitted.) At the time it accepted Angeles's guilty plea, the trial court stated on the record: "If you are not a citizen, you will hereafter be deported, denied naturalization or excluded from the U.S."

In August 2015, Angeles filed a petition for a writ of habeas corpus alleging ineffective assistance of counsel regarding immigration

2

advisements. Angeles filed a declaration in connection with that petition, in which she declared her attorneys failed to explain the immigration consequences of her guilty plea, she did not understand those consequences, and if she had understood them, she would have gone to trial on the case or pled to a different charge.

The district attorney filed a return to the trial court's order to show cause. The district attorney provided the declarations of Michael Munoz and Ciprian Turcu, Angeles's attorneys in the underlying case. In his declaration, Turcu stated he advised Angeles, after confirming she was not a United States citizen, of the immigration consequences of a guilty plea to any one of the charged offenses, including that she "would probably be deported." After reviewing the report of the district attorney's investigator, and confirming the admissions Angeles made to that investigator, Turcu told Angeles the case could not be won at trial. Turcu told Angeles her immigration situation could not "realistically" be "salvag[ed]." Finally, Turcu stated: "I told her that the decision to go to trial was hers, and that we would certainly represent her in trial if she chose to try the case, but that again, she would probably lose. Ms. Angeles agreed that the best course of action would be to try to settle the case through a plea, and to try to minimize the jail time. She never told me she wished to go to trial. She gave me no indication that she did not understand the immigration consequences as I had explained them to her." Turcu communicated with Angeles through a Spanish speaker who interpreted for him.

Munoz, a Spanish speaker, advised Angeles in Spanish that if she pled guilty to the charges she would never be able to obtain immigration papers in the United States and "she could be deported, if immigration arrested her." Munoz accompanied Angeles to court and negotiated with the

3

district attorney to reduce the offered sentence from 16 months in jail to probation with 180 days in jail, which the district attorney said was "'take-it-or-lose-it.'" The district attorney refused Munoz's request to change the charge to something like misdemeanor grand theft which would not carry immigration consequences.

Munoz's declaration states that he told Angeles, in Spanish, about the district attorney's offer, and that "taking the deal as it stood would result in her deportation, denial of naturalization, exclusion from admission, and denial of amnesty." Munoz advised Angeles to nevertheless take the offer, because taking the matter to trial would result in a longer sentence with the same immigration problems. Munoz believed Angeles could not win the case, due to her admissions to the district attorney's investigator.

After Angeles agreed to take the offer, Munoz went through the plea form with her line-by-line, translating the entire document into Spanish, including the paragraph on immigration consequences. Munoz asked if Angeles had any questions, and she said she did not.

An official Spanish-language interpreter also translated the entire plea form for Angeles and asked if she had any questions. Angeles again said she did not. Munoz stated in his declaration, "I had no reason to believe she did not understand what she was signing."

After an evidentiary hearing, the trial court denied Angeles's petition, finding "the petitioner was advised of the deportation issues; no ineffectiveness of counsel existed and the petitioner failed to establish her burden of proof."

In April 2024, Angeles filed a motion to vacate her convictions under Penal Code section 1473.7, subdivision (a)(1). The motion was supported by Angeles's declaration, in which she stated, in relevant part:

4

"At the time of my plea, I did not understand the severe immigration consequences my guilty plea in this case would cause. I was under the faulty impression that I would qualify for some form of relief not only because I have been in this country since 1990 but also because I had three U.S. citizen children that lived and depended on me. Mr. Munoz and Mr. Turcu never discussed the immigration consequences of my plea nor the fact that despite the mitigating factors—having U.S. citizen children and having resided in the U.S for over 30 years—immigration officials would deport me regardless.

"On August 6, 2015, I filed a Writ of Habeas Corpus under case number M-16365.

"At the time of the Evidentiary Hearing in case number M-16365, Mr. Turcu and Mr. Munoz untruthfully declared that they had informed me of the dire immigration consequences of my plea in this case.

[¶] . . . [¶]

"If I had understood correctly that I would never be able to apply for some form of relief from deportation, be subject to inadmissibility and ineligible to apply for cancellation of removal, or permanent resident status because of my guilty plea in this case, I would not have accepted the guilty plea in this case. I did not fully understand that I was signing away my future. By signing, I gave immigration officials cause to deport me and separate me from the people that matter most to me, my children, and siblings.

"If I had understood the true consequences of my plea, I would have insisted that Mr. Munoz and Mr. Turcu try harder to obtain an alternative plea because of my U.S. citizen children, who depend on me, and

5

my extended family, who all reside here. Nearly my entire life has been built in this country.

"I would have been willing to serve more jail time because more jail time would have been nothing compared to permanent separation from my family. If we could not obtain a better charge, I would have completely agreed to take my chances at trial. I know my sisters would have supported my decision and looked after my children while I was fighting for my future in the U.S. because staying in this country with my family was and is the most important thing to me."

The trial court denied the motion "because moving party has not established by a preponderance of the evidence that moving party's conviction was invalid due to a prejudicial error, damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the immigration consequences of the conviction."

Angeles filed a timely notice of appeal.

DISCUSSION

To prevail on a motion under Penal Code section 1473.7, Angeles was required to show by a preponderance of the evidence (1) she did not subjectively understand the immigration consequences of her guilty plea, and (2) her lack of understanding constituted prejudicial error. (*People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*).) We review the trial court's order denying the motion de novo. (*Id.* at pp. 319–320.) Because the trial court's order was based solely on its review of documents, we owe no deference to the court's factual determinations. (*Id.* at p. 320.)

To determine whether Angeles subjectively understood the actual and potential consequences of pleading guilty, we must consider ""the mindset of the defendant and what he or she understood—or didn't

6

understand—at the time the plea was taken.”’” (*People v. Benitez-Torres* (2025) 112 Cal.App.5th 1252, 1262.) Angeles must support her assertions of a mistake of law or fact, or her claim that her attorney gave her inaccurate advice, with objective evidence. (*Espinoza, supra*, 14 Cal.5th at p. 321.)

Angeles was advised in the plea agreement that her conviction “*will have the consequence of deportation*” (italics added), and she initialed this advisement on the form indicating her understanding. Her counsel went through the plea agreement with her “line-by-line” in Spanish, and an official Spanish language court interpreter went through the entire plea agreement form with her. Both the attorney and the interpreter asked Angeles if she had any questions, and she replied that she did not.

Additionally, before accepting her change of plea, the trial court verbally advised Angeles, “If you are not a citizen, *you will hereafter be deported*” (italics added), and Angeles stated that she understood. “Appellant’s argument that [she] was not aware of the mandatory nature of the deportation flies in the face of the mandatory language used to describe the likelihood of deportation. Appellant is not entitled to simply ignore the admonitions [she] was given about the consequences of the plea, and argue that [she] unilaterally assumed [she] would be treated in direct contravention of what [she] was advised orally and in writing.” (*People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 663 (*Abdelsalam*).)

Moreover, in this case the trial court had before it the declarations of Angeles’s trial counsel, Munoz and Turcu, filed in connection with the petition for habeas corpus. Both declared that they advised Angeles of the immigration consequences of a guilty plea; Munoz specifically advised that “taking the deal as it stood would result in her deportation . . . .” Both also declared Angeles never stated or otherwise indicated she did not

understand the terms of her guilty plea or the immigration consequences thereof.[1]

To establish prejudicial error, Angeles must demonstrate "'a reasonable probability that [she] would have rejected the plea if [she] had correctly understood its actual or potential immigration consequences.'" (*Abdelsalam*, *supra*, 73 Cal.App.5th at p. 665.) We consider the totality of the circumstances in determining whether Angeles has demonstrated such a reasonable probability. (*People v. Vivar* (2021) 11 Cal.5th 510, 529.) "Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Id.* at pp. 529–530.) "These factors are not exhaustive, and no single type of evidence is a prerequisite to relief." (*Espinoza*, *supra*, 14 Cal.5th at p. 321.) "It is not enough for the defendant simply to declare that he or she would not have accepted a plea that would result in deportation. [Citation.] Rather, the defendant must 'corroborate such assertions with "objective evidence."' [Citation.]" (*People v. Curiel* (2023) 92 Cal.App.5th 1160, 1178.)

Here, Angeles's maximum sentence was eight years, eight months. The district attorney initially offered a 16 month deal, which was then reduced to six months. At all points, the district attorney refused to modify the charges to avoid immigration consequences from a crime of moral

---

[1] Angeles is a Spanish speaker. Munoz is also a Spanish speaker and provided the information regarding immigration consequences to Angeles in Spanish. Turcu communicated with Angeles with the assistance of a Spanish speaker in his office.

turpitude. Both of Angeles's trial court attorneys stated in their declarations that, because of Angeles's admissions to the district attorney's investigator, the case was not winnable, and that they advised her of this problem. Considering the totality of the circumstances at the time, we conclude there is no reasonable probability Angeles would have rejected the plea agreement if she subjectively understood the immigration consequences of her plea deal.

## DISPOSITION

The postjudgment order is affirmed.

BANCROFT, J.*

WE CONCUR:

DELANEY, ACTING P. J.

GOODING, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.